IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE STEM, INC. DERIVATIVE LITIGATION | ) ) ) ) ) C.A. No. 23-1011-MN (Consolidated) |

# MEMORANDUM OPINION

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Timothy Brown, Saadia Hashmi, THE BROWN LAW FIRM, P.C., New York, NY; Peretz Bronstein, Eitan Kimelman, BRONSTEIN, GEWIRTZ & GROSSMAN, LLC, New York, NY – Attorneys for Plaintiff.

Anne S. Gaza, Elena C. Norman, Daniel G. Mackrides, YOUNG, CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE – Attorneys for Defendant.

Boris Feldman, Doru Gavril, Jon B. Fougner, FRESHFIELDS US LLP, Redwood City CA; Courtney Y. Sohn, FRESHFIELDS US LLP, New York, NY – Attorneys for Defendants John Carrington, William Bush, Michael C. Morgan, Adam E. Daley, David Buzby, Anil Tammineedi, Lisa L. Troe, Laura D'Andrea Tyson, Jane Woodward, Larsh Johnson, Prakesh Patel, Alan Russo, Bryan Ho

Stefan Atkinson, Ahson Azmat, KIRKLAND & ELLIS LLP, New York, NY – Attorneys for Defendants Eric Scheyer, Michael D. Wilds, Alec Litowitz, Desirée Rogers, C. Park Shaper, and Star Peak Sponsor LLC

March 24, 2025
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are Plaintiffs Samhita Gera, Denish Bhasvar, and Laurie A. Hanna's ("Plaintiffs") objections ("the Objections") to Magistrate Judge Burke's January 31, 2025, Report and Recommendation ("the Report"). The Report recommended (1) granting the Motion to Dismiss filed by the 19 individual Defendants in this matter ("the Individual Defendants"), (D.I. 42), (2) granting the Motion to Dismiss filed by nominal Defendant Stem, Inc. ("Stem"), (D.I. 40), and (3) denying proposed intervenor Edward Manetta's motion to intervene. (D.I. 48). The Court has reviewed the Report, (D.I. 73), Plaintiffs' Objections, (D.I. 74), and Defendants' response, ("the Response") (D.I. 75). The Court has also considered *de novo* the objected-to portions of the Report and the relevant portions of the motions, and supporting papers. (D.I. 34, 41, 43, 48, 49, 50, 61, 62, 64). For the reasons set forth below, Plaintiffs' Objections are OVERRULED, the Report is ADOPTED, the motions to dismiss are GRANTED, (D.I. 40, 42), and the Motion to Intervene is DENIED as MOOT (D.I. 48).

**I.    BACKGROUND**

The Report sets forth a detailed description of the parties, factual background, and procedural history. (*See* D.I. 73 at 2-6). The parties have not objected to any of those sections of the Report and the Court finds no clear error in them on the face of the record. The Court therefore adopts those sections and incorporates them here:

**A.    The Parties**

Stem is a Delaware corporation headquartered in San Francisco, California. (D.I. 34 at ¶ 44) It offers artificial intelligence ("AI")-driven clean energy storage systems (e.g., batteries and related software and hardware) to its customers, which include commercial and industrial enterprises, independent power producers, renewable project developers and energy grid operators. (*Id*. at ¶ 2) Stem was formerly known as Star Peak Energy Transition Corp. ("Star Peak"); it is a successor by merger to legacy Stem, Inc. ("Legacy Stem"). (*Id*. at ¶¶ 1, 3, 8) Star Peak was a special purpose

1

acquisition company, "a publicly traded corporation with a two-year life span formed with the sole purpose of effecting a merger . . . with a privately held business to enable it to go public." (*Id.* at ¶ 3)

Plaintiffs are current shareholders of Stem Common Stock. (D.I. 1 at ¶¶ 26, 27; D.I. 34 at ¶ 43) Hanna facially alleges that she has held Stem common stock continuously and at all relevant times (i.e., from December 4, 2020 through April 3, 2023). (D.I. 34 at ¶ 43; *see id.* at ¶ 1) Gera has continuously held Stem common stock since purchasing it on February 23, 2021. (D.I. 1 at ¶ 26) Bhavsar has held Stem common stock continuously since purchasing it on January 29, 2021. (*Id.* at ¶ 27) The suit is filed derivatively on behalf of Stem. (D.I. 34 at ¶ 1) Individual Defendant Sponsor is a Delaware limited liability company that sponsored Star Peak. (*Id.* at ¶ 3) The remaining Individual Defendants are current and former members of Stem/Star Peak's Board of Directors and/or executives at Stem/Star Peak. (*Id.* at ¶¶ 45-98)[.]

**B.    Factual Background**

On December 4, 2020, Star Peak filed a Form 8-K with exhibits with the United States Securities and Exchange Commission ("SEC"), announcing it had entered an agreement to merge with Legacy Stem. (*Id.* at ¶ 8) The post-Merger entity was expected to be worth $1.35 billion and have $608 million in gross proceeds. (*Id.* at ¶¶ 8, 142) Thereafter, Star Peak "filed a registration statement in connection with the proposed Merger on December 17, 2020, on Form S-4 with the SEC (the 'Registration Statement'), followed by a joint prospectus and proxy statement on Form 424B3 (the 'Merger Proxy,' and together with the Registration Statement, the 'Offering Documents')." (*Id.* at ¶ 8) The Boards of Star Peak and Legacy Stem filed the Merger Proxy on March 30, 2021, seeking shareholder approval for the Merger and certain charter proposals, among other things. (*Id.* at ¶ 23) With shareholder approval, the companies merged on April 28, 2021 (the "Merger"). (*Id.* at ¶¶ 8, 154) Legacy Stem survived as a wholly owned subsidiary of Star Peak, and Star Peak renamed itself "Stem, Inc." (*Id.* at ¶ 154) Stem then undertook the business operations of Legacy Stem. (*Id.*)

Additional facts relevant to resolution of the instant Motions will be discussed in Section III.

**C.    Procedural Background**

Plaintiffs' allegations in this case relate in part to allegations in a related securities case: *In re Stem, Inc. Sec. Litig.*, Civil Action No. 3:23-cv-2329-MMC (N.D. Cal. May 12, 2023) (the "Securities Action"). The Securities Action is a class action lawsuit, which was

initiated in the United States District Court for the Northern District of California ("Northern District of California") on May 12, 2023 against Stem, Star Peak and a group of the Individual Defendants. *In re Stem, Inc. Sec. Litig.*, Civil Action No. 3:23-cv-2329-MMC, D.I. 1 (N.D. Cal. May 12, 2023). The claims in the Securities Action include alleged violations of Section 14(a) ("Section 14(a)") of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9, violations of Section 20(a) of the Exchange Act, violations of Section 10(b) ("Section 10(b)") of the Exchange Act and Rule 10b-5, and violations of the Exchange Act for Insider Selling. *Id.*, D.I. 87 at ¶¶ 378-420 (N.D. Cal. Oct. 17, 2023). The defendants moved to dismiss all claims in the Securities Action, and the Northern District of California granted the defendants' motion in its entirety. *Petersen v. Stem, Inc.*, Case No. 23-cv-02329-MMC, 2024 WL 4602710 (N.D. Cal. Aug. 30, 2024). Thereafter, the plaintiffs filed a first amended consolidated complaint. *In re Stem, Inc. Sec. Litig.*, Civil Action No. 3:23-cv-2329-MMC, D.I. 127 (N.D. Cal. Nov. 8, 2024). The defendants have moved to dismiss all claims within the first amended consolidated complaint, and the Securities Action remains pending. *Id.*, D.I. 128 (N.D. Cal. Dec. 20, 2024).

Plaintiffs Gera and Bhavsar began the instant lawsuit on August 26, 2023, via the filing of a complaint in the Northern District of California, brought on behalf of Stem and against certain of the Defendants. (D.I. 1) Pursuant to the parties' stipulation, the case was transferred to this Court on September 15, 2023. (D.I. 20)[.]

On December 15, 2023, Plaintiff Hanna filed another derivative action in this Court on behalf of Stem against all Defendants (the "Hanna Action"). (Civil Action No. 23-1436-MN, D.I. 1) Pursuant to all parties' stipulation, the two actions were consolidated into the instant action, and the Complaint in the Hanna Action was designated the operative Complaint in this case. (D.I. 32)[.]

The operative Complaint, which was then re-filed, (D.I. 34), asserts nine claims:

● First Claim: Violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, Against Scheyer, Morgan, Wilds, Daley, Litowitz, Rogers and Shaper, (*id.* at ¶¶ 456-64);

● Second Claim: Breach of Fiduciary Duties Against Individual Defendants, (*id.* at ¶¶ 465-77);

3

- Third Claim: Unjust Enrichment Against Individual Defendants, (*id*. at ¶¶ 478-82);

- Fourth Claim: Abuse of Control Against Individual Defendants, (*id*. at ¶¶ 483-86);

- Fifth Claim: Gross Mismanagement Against Individual Defendants, (*id*. at ¶¶ 487-91);

- Sixth Claim: Waste of Corporate Assets Against Individual Defendants, (*id*. at ¶¶ 492-97);

- Seventh Claim: Contribution Under Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Section 21D ("Section 21D") of the Private Securities Litigation Reform Act ("PSLRA"),2 15 U.S.C. § 78u-4(f), Against Carrington, Bush, Scheyer, Wilds, Morgan, Daley, Litowitz, Rogers, Johnson, Patel, Russo, Ho and Shaper, (*id*. at ¶¶ 498-502);

- Eighth Claim: Contribution Under Section 21D of the PSLRA, 15 U.S.C. § 78u-4(f), and Section 11(f) ("Section 11(f)") of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k(f)(1), Against Scheyer, Wilds, Morgan, Daley, Litowitz, Rogers and Shaper, (*id*. at ¶¶ 503-12); and

- Ninth Claim: Aiding and Abetting Breach of Fiduciary Duty Against Carrington, Bush, Buzby and Tammineedi, (*id*. at ¶¶ 513-19).

Prior to the filing of the Complaint, no demand was made on Stem's Board to institute the action. (D.I. 34 at ¶ 438) Plaintiffs assert that any such demand would have been futile. (*Id*. at ¶¶ 437-55)[.]

On April 1, 2024, Stem filed Stem's Motion to Dismiss, (D.I. 40); the Individual Defendants' Motion to Dismiss was filed on the same day, (D.I. 42). Manetta filed the Motion to Intervene on June 20, 2024. (D.I. 48) All of the Motions were fully briefed as of August 2, 2024. (D.I. 64) The Motions were all referred to the Court for resolution by United States District Judge Maryellen Noreika on September 5, 2024. (D.I. 70)[.]

(*Id*. at 2-9) (punctuation added).

Judge Burke issued the Report on January 31, 2025. In Section III.A, he recommended dismissing the contribution claims with prejudice as unripe. (D.I. 73 at 8). Section III.B recommended dismissing the Section 14(a) claim without prejudice for failure to state a claim. (*Id*. at 17). Section III.C recommended dismissing the related state law claims without prejudice for lack of subject matter jurisdiction. (*Id*. at 18). Finally, Section III.D recommended denying the Motion to Intervene as moot. (*Id*. at 19). The Plaintiffs filed their Objections on February 14, 2025, objecting only to Sections III.B and III.C. (D.I. 74 at 1). On February 28, 2025, the Defendants responded, asking the Court to adopt the Report. (D.I. 75 at 1). The parties do not object to Sections III.A and III.D of the Report, and the Court finds no clear error on the face of the record. Accordingly, the Court will adopt those Sections of the Report; the contribution claims are dismissed with prejudice and the motion to intervene is denied as moot. The Court now addresses the Objections to Sections III.B and III.C.

## II.   **LEGAL STANDARD**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556, U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (internal citations omitted).

In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court is not obligated to accept as true "bald assertions" or "unsupported

5

conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal citations omitted).

### III.  DISCUSSION

Plaintiffs object to Sections III.B and III.C of the Report's findings: (1) that Plaintiffs' Section 14(a) claim should be dismissed as either indiscernible or not viable; and (2) that the remaining Delaware state law claims should be dismissed for lack of supplemental jurisdiction. The Court will address each objection in turn.

#### A.  The Section 14(a) Claim

The Report found that heightened pleading standards applied to Plaintiffs' Section 14(a) claim. (D.I. 73 at 9). The Report also found Plaintiffs' Complaint was a "puzzle pleading", and so failed both heightened and normal pleading standards, and the Report recommended dismissal without prejudice as a result. (D.I. 73 at 15-16). Plaintiffs challenge that finding, asserting their Section 14(a) claim is not a puzzle pleading, that their claim meets both simple and heightened pleading standards, and that Plaintiffs should be given leave to amend, not see their 14(a) claim dismissed. (D.I. 74 at 2-6). More specifically, Plaintiffs objects to the characterization of their operative pleading as "solely based in negligence," asserting the Complaint accurately pleaded a 14(a) claim sounding in negligence or fraud. (D.I. 74 at 2). Regardless of the basis, Plaintiffs argue, the Report incorrectly applied the pleading standards of both Federal Rule of Civil Procedure 9(b) and the PSLRA in disposing of its 14(a) claim, and in so doing, did not recognize that the operative pleading satisfied the PLSRA's pleading requirements. (D.I. 74 at 3-5). But

should the Court agree with the Report's findings, the Plaintiffs argue, the right course of action is to permit Plaintiffs leave to amend, not dismissal. (D.I. 74 at 6).

### 1. Whether Heightened Pleading Standards Apply

Although the Third Circuit has not expressly "determined whether the PSLRA's heightened pleading standard applies to Section 14(a) claims that sound in negligence," *In re Resolute Energy Corp. Sec. Litig.*, No. 21-1412, 2022 WL 260059, at *2 n.4 (3d Cir. Jan. 27, 2022), the Report set forth a reasoned analysis supporting application of Rule 9(b) and the PLSRA's standards to a 14(a) claim:

> There is no question that since Plaintiffs allege that "the statements contained in the Merger Proxy were materially false and misleading[,]" albeit negligently, (D.I. 34 at ¶ 460), Plaintiffs' Section 14(a) claim is subject to the PSLRA. *In re Pattern Energy Grp. Inc. Sec. Litig.*, C.A. No. 20-275-MN-JLH, 2021 WL 311257, at *9 (D. Del. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 765760 (D. Del. Feb. 26, 2021); *see also Resnik v. Woertz*, 774 F. Supp. 2d 614, 630 (D. Del. 2011); *In re Keryx Biopharms.*, 454 F. Supp. 3d at 412; *Schaper v. LENSAR, Inc.*, C.A. No. 23-692-JLH, 2024 WL 4817656, at *2 (D. Del. Nov. 18, 2024). And the text of Section 78u-4(b)(1) of the PSLRA states that:
>
>> In any private action arising under this chapter in which the plaintiff alleges that the defendant –
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u-4(b)(1). The statute is unambiguous; the heightened pleading requirement "applies '[i]n *any* private action arising under' the Exchange Act." *Kooker ex rel. Hecla Mining Co. v. Baker*, 497 F. Supp. 3d 1, 6 (D. Del. 2020)d[]][.] Therefore, Section 78u-4(b)(1) extends Rule 9(b)'s

>	requirements to Section 14(a) claims, like this one, that relate to the making of misleading statements.

(D.I. 73, at 9-10) (internal citations shortened).

The Court agrees with the Report's reading of the plain language of the PSLRA that the heightened pleading standard applies in any action under the Exchange Act. 15 U.S.C. § 78u04(b)(1). Thus, Plaintiffs' Section 14(a) claim will be held to the heightened pleading standard. *In re Pattern Energy Group Inc. Sec. Litig.*, 22021 WL 311257, *9 (D. Del. 2021).

### 2. Whether Plaintiff's Pleading is a "Puzzle Pleading"

Because the heightened pleading standard applies, the Court next turns to the scope of that finding's impact on Plaintiffs' objection that their Complaint is not a puzzle pleading. (D.I. 74, at 4). In securities claims, a puzzle pleading is one that reproduces blocks of text from an allegedly deceptive statement or filing, then offering only standard reasons as to why such quoted text is false or misleading. *See In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 534 (S.D.N.Y. 2024). Such pleadings generally "require the defendant and the court to match the statements up with the reasons they are false or misleading[,]" and are insufficient for claims that invoke heightened pleading standards. *Vatidis v. Trimble, Inc.*, 2019 WL 3546693, *4 (D. Del. 2019) (internal quotations omitted).

As before, Plaintiffs' argument fails. The Report carefully considered when a pleading constitutes a puzzle pleading, which paragraphs in the Complaint may overcome this deficiency, and any other possibilities where the allegations could reach the requisite level of particularity. (D.I. 73 at 8-17). As part of its analysis, the Report reasoned:

>	[N]owhere in these paragraphs, or in the paragraphs following them, does the Complaint explain why it has bolded and italicized any such content, or why it is that these bolded or italicized portions are said in some way to relate to any alleged misstatements or omissions at issue. […] Moreover, the various block quotes are often repetitive. In a number of them, the same material is excerpted that

8

> had previously been excerpted in a prior paragraph, but now with different portions of that material being highlighted for emphasis. (*See, e.g.,* D.I. 34 at ¶¶ 227, 229, 231, 232, 237, 238) And this all happens with no acknowledgement that such repetition is occurring, nor with any explanation as to what the pleader is trying to convey by doing this. Additionally, the Complaint makes no effort to place any of the alleged false or misleading statements into understandable categories that might otherwise assist the reader.

(D.I. 73 at 13-14).

Yet in objecting, Plaintiffs only reiterate arguments the Report already analyzed. (*See* D.I. 74 at 4). Plaintiffs suggest the Complaint "holistically identifies which specific statements" created an actionably false or misleading impression of the value of the Merger and the related entities. (*Id.*). To illustrate that point, Plaintiffs direct the Court to several dozen paragraphs of the Complaint, ranging from paragraphs 12 to 145-87 to 331 to 412, among others. (D.I. 74 at 4, citing D.I. 34). To follow that thread would require the Court to "match the statements up with the reasons they are false or misleading" much like matching up the pieces of a jigsaw puzzle. *In re Wilmington Tr. Sec. Litig.*, 852 F. Supp. 2d 477, 490 (D. Del. 2012) ("While the complaint contains hundreds of quotations in over forty pages . . . nowhere does the complaint specifically identify those statements upon which plaintiffs base their claims."); *see, e.g.*, *In re Metropolitan Securities Litigation*, 532 F. Supp. 2d 1260, 1279 (E.D.Wa. 2007); *Patel v. Parnes*, 253 F.R.D. 531, 552-53 (C.D. Cal. 2008); *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 478-79 (S.D.N.Y. 2021) ("Plaintiffs' 'selective' bolding does little to assist the Court in identifying the falsity of Defendants' statements[.]").

Even if the Court begins to fit those pieces together, the allegations the Plaintiffs cite – as the Report addresses – fail to demonstrate, or even allege, why the statements are false or misleading. The Court finds the Report accurately contended with paragraph 239 of the Complaint, which alleged the Merger Proxy's falsity:

9

> But in this paragraph, the Complaint never clearly explains what it is talking about. It does not specify what "business, operations and prospects" or "value of . . . investment and future post-Merger" or "business and competitive standing" or "strategic partnerships and revenues"-type information it is speaking to. And to the extent the pleading is asserting that portions of the previously-referenced block quotes give off one of the types of "false impression[s]" at issue, it never indicates which portions it is referring to, or why that is so.

(D.I. 73 at 14-15).

As the Report correctly noted, the Complaint fails to plainly address the basis for which it challenges the many preceding Merger Proxy statements. The failure is not in detailing the possibility of alleged misstatements, but in failing to, with the requisite particularity, detail how each of the alleged misstatements caused "a false impression of Legacy Stem's business, operations, and prospects." (D.I. 34 ¶ 239).

The Court adopts the Report's recommendation to dismiss Plaintiffs' Section 14(a) claim. Nonetheless, because this is Plaintiffs' first pleading, the Court will also adopt the Report's recommended course of action. As the Report states, "the Court cannot say for sure that Plaintiffs could not plead a viable Section 14(a) claim at this stage, and in light of Federal Rule of Civil Procedure 15's admonition that leave to amend should be freely permitted 'when justice so requires[,]' Fed. R. Civ. P. 15(a)(2)," (D.I. 73 at 17), and so the Court will dismiss the claim without prejudice.

### B. The State Law Claims

Plaintiffs next challenge the Report's conclusion that, absent a pending Exchange Act claim, the Complaint's related state law claims should be dismissed. (D.I. 73 at 17-18; D.I. 74 at 6-8). Plaintiffs argue first that the Report is mistaken as to jurisdiction over the state law claims as jurisdiction exists pursuant to the Section 14(a) claim. (D.I. 74 at 6). They also assert that jurisdiction over the state law claims is proper, notwithstanding dismissal of the Exchange Act

claim, because their state law claims have federal question jurisdiction based on underlying claims of violations of the Exchange Act. (D.I. 74 at 7). Should the Court disagree with their theory, Plaintiffs assert supplemental jurisdiction lingers until the Section 14(a) claim is dismissed with prejudice. (*Id.*).

Plaintiffs misinterpret the extent of supplemental jurisdiction. Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* § 1367(a).

A court may decline to exercise supplemental jurisdiction when "the court has dismissed all claims over which it has original jurisdiction." *Kooker ex rel. Hecla Mining Co. v. Baker*, 497 F. Supp. 3d 1, 6 (D. Del. 2020); 28 U.S.C. § 1367(c)(3). The Report properly identified § 1367(c)(3) as its basis for declining to exercise supplemental jurisdiction, and Plaintiffs' Objections point to no proposition of law suggesting otherwise. This makes sense given Plaintiffs' state law claims are "pendent claims arising under state law that would not independently qualify for federal-court adjudication." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). As such, the Report was correct to recommend dismissal once it decided to recommend against exercising supplemental jurisdiction.

In the event a federal court decides against exercising supplemental jurisdiction, "it should do so without prejudice, as there has been no adjudication on the merits." *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). Therefore, if a district court declines to exercise supplemental jurisdiction, its only course is to dismiss the related state law claims without prejudice, not retain such claims until the original federal claim is dismissed with prejudice, as Plaintiffs would have

11

the Court do. *Id*. Consequently, the Court finds that the Report accurately evaluated the Court's jurisdiction to hear the state law claims and adopts that reasoned analysis. Therefore, the Court will dismiss the state law claims without prejudice.

## IV.     **CONCLUSION**

For the reasons stated above, Plaintiffs' Objections to the Report are OVERRULED, the Report is ADOPTED, the Defendants' motions to dismiss are GRANTED, and potential intervenor Edward Manetta's Motion to Intervene is DENIED as MOOT. An appropriate order will follow.