IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE STEM, INC. DERIVATIVE LITIGATION | ) ) ) ) | C.A. No. 23-1011-MN (Consolidated) |

## MEMORANDUM OPINION

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Timothy Brown, Saadia Hashmi, THE BROWN LAW FIRM, P.C., New York, NY; Peretz Bronstein, Eitan Kimelman, BRONSTEIN, GEWIRTZ & GROSSMAN, LLC, New York, NY – Attorneys for Plaintiff.

Anne S. Gaza, Elena C. Norman, Daniel G. Mackrides, YOUNG, CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE – Attorneys for Defendant.

Boris Feldman, Doru Gavril, Carl P. Hudson, FRESHFIELDS US LLP, Redwood City CA – Attorneys for Defendants John Carrington, William Bush, Michael C. Morgan, Adam E. Daley, David Buzby, Anil Tammineedi, Lisa L. Troe, Laura D'Andrea Tyson, Jane Woodward, Larsh Johnson, Prakesh Patel, Alan Russo, Bryan Ho and Nominal Defendant Stem, Inc.

Stefan Atkinson, Byron Pacheco, KIRKLAND & ELLIS LLP, New York, NY – Attorneys for Defendants Eric Scheyer, Michael D. Wilds, Alec Litowitz, Desirée Rogers, Craig Rohr, Dain F. DeGroff, C. Park Shaper, and Star Peak Sponsor LLC

March 31, 2026
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are two motions to dismiss: that of Defendant Stem, Inc., (D.I. 82), and that of the Individual Defendants (D.I. 80).[1] The motions seek dismissal of Plaintiffs' Amended Complaint, which Plaintiffs filed after the Court's order dismissing their first attempt at claiming violations of federal securities law against the Defendants. (D.I. 77). Yet Plaintiffs' amendments fail to muster allegations that can survive Defendants' motion, and their renewed attempt to use a federal cause of action to fit state law claims into this action also fails. Accordingly, Defendant Stem's motion to dismiss will be granted, and the Amended Complaint will be dismissed with prejudice.

## I.    BACKGROUND

### A.    Factual Background

The Court has before dismissed Plaintiffs' Complaint. (D.I. 77). Since then, little has changed. As alleged in the Amended Complaint (D.I. 78), Stem remains a Delaware corporation headquartered in San Francisco, California. (*Id.* ¶ 60). It continues to offer artificial intelligence-driven energy storage systems to its customers, supplying batteries, software, and hardware to a wide range of clients that includes enterprises, power producers, renewable energy project developers, and energy grid operators. (*Id.* ¶ 5). It was before known as Star Peak Energy Transition Corp. ("Star Peak"), and it succeeds by merger the legacy Stem, Inc. ("Legacy Stem"). (*Id.*). Star Peak was founded as a special purpose acquisition company, and was a publicly traded

---

[1]    The Individual Defendants are: John Carrington, Eric Scheyer, William Bush, Michael C. Morgan, Adam E. Daley, Alec Litowitz, Desirée Rogers, C. Park Shaper, David Buzby, Anil Tammineedi, Lisa L. Troe, Laura D'Andrea Tyson, Jane Woodward, Larsh Johnson, Prakesh Patel, Alan Russo, Bryan Ho, Craig Rohr, Dain F. DeGroff and Star Peak Sponsor LLC.

entity with a corporate lifespan of two years, made with the sole intent of acquiring a private business so that business could go public. (*Id.* ¶ 6).

Plaintiffs are current Stem Common Stock shareholders. (D.I. 78 ¶¶ 57-59). Plaintiff Hanna alleges that she held common stock at all relevant times; Plaintiff Gera has held common stock since February 23, 2021; and Plaintiff Bhavsar has held common stock since January 29, 2021. They file suit derivatively on behalf of Stem, which is also a nominal defendant. Individual Defendants are current or former members of either Stem or Star Peak's Board of Directors or are otherwise an executive at one of Stem or Star Peak. (*Id.* ¶¶ 61-121).

The timeline of the merger at issue remains the same. Star Peak filed a Form 8-K and requisite exhibits with the United States Securities and Exchange Commission ("SEC") on December 4, 2020, announcing its intent to merge with Legacy Stem. (*Id.* ¶ 12). Star Peak then filed a Form S-4, the necessary "registration statement in connection with the proposed merger on December 17, 2020." (*Id.*). It followed that filing up with "a joint prospectus and proxy statement on Form 424B3," which was solicited on March 30, 2021. (*Id.* ¶¶ 12, 33). On April 28, 2021, the merger was consummated, and the new entity changed its name to Stem, Inc. (*Id.* ¶ 19).

### B.        Procedural Background

This action was originally filed in the Northern District of California on August 26, 2023, and by agreement of the parties, transferred to the District of Delaware on September 13, 2023. (D.I. 1, 21). Also by agreement, the parties designated an Operative Complaint. (D.I. 32 (stipulation); D.I. 34 (Operative Complaint)). The Operative Complaint alleged violations of Sections 10(b), 11(f), 14(a), and 21D of the Exchange Act. (D.I. 34 ¶¶ 456-519). Thereafter, Defendants filed motions to dismiss (D.I. 40, 42), which were referred to Magistrate Judge Burke, who issued a Report and Recommendation on January 31, 2025. (D.I. 73). Plaintiffs objected under Fed. R. Civ. P. 72(a). (D.I. 74, 75). The Court overruled those objections on

2

March 24, 2025, dismissing a variety of Plaintiffs' claims with prejudice, but dismissing their Section 14(a) claim without prejudice for failing to reach the requisite pleading standard. (D.I. 76, 77). Plaintiffs' Amended Complaint timely followed (D.I. 78) and Defendants filed the instant motions to dismiss. (D.I. 80, 82). Briefing on those motions is complete. (D.I. 81, 83, 86, 87, 89, 90). The Court now addresses the instant motions to dismiss.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Failure to State a Claim

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556, U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (internal citations omitted).

In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents. *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010). The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F. 3d 902, 906, n.8 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F. 3d 315, 321 (3d Cir. 2008) (internal citations omitted).

3

**B.      The Private Securities Litigation Reform Act**

"As a check against abusive litigation by private parties, Congress enacted the Private Securities Litigation Reform Act of 1995" ("PSLRA"). *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).  The PSLRA requires a plaintiff "in any private action under [the Exchange Act] . . . [to] specify [in the complaint] each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

**III.      DISCUSSION**

Defendants' challenges to the Amended Complaint work in concert.  Stem's briefing challenges the jurisdictional sufficiency of the Amended Complaint, asking the Court to dismiss Plaintiffs' claims without reaching the legal sufficiency of their allegations.  (D.I. 83).  Should the Court disagree, the Individual Defendants' briefing supplies the next part of the challenge, asking the Court to decide that the Section 14(a) allegations fail to state a claim.[2]  (D.I. 81).  Any issues regarding jurisdiction or pleading sufficiency would be dispositive of the claim, so the Court begins with the challenges raised in Stem's motion.

**A.      The Amended Complaint's Failure to Identify a Federal Cause of Action**

Stem's motion to dismiss raises various bases for a failure to plead a federal cause of action. Stem argues that under Section 14(a), no derivative claim exists – and if that is insufficient for the Court, that Stem's derivative claim is better placed in the Court of Chancery.  (D.I. 83 at 6-7).  It also argues that, regardless of the Court's finding on whether Section 14(a) supports a derivative

---

[2]      The Individual Defendants recognize that "[i]f the Court grants Stem's motion to dismiss for failure to make demand on the Board, then the Court need not decide this motion." (D.I. 81 at 1).

claim, Plaintiffs have failed to effectively plead demand futility on Stem's board, and accordingly, derivative standing fails.  Plaintiffs, of course, argue the opposite: Section 14(a) explicitly supports a derivative cause of action, the claim should remain in this Court, and demand futility was properly pled.  (D.I. 87 at 7 *et seq.*).

Whether Section 14(a) of the Exchange Act provides for a derivative cause of action is a question that courts of other circuits, in recent years, have begun to grapple with.  *Compare Lee v. Fisher*, 70 F. 4th 1129, 1149 (9th Cir. 2023) (en banc) *with Seafarers Pension Plan on behalf of Boeing Co. v. Bradway*, 23 F. 4th 714, 722 (7th Cir. 2022).  In both decisions, that question arose when a company's forum selection bylaw mandated derivative suits be brought in Delaware state courts – and whether that bylaw trumped the – derivative in nature – federal claim.  The Ninth Circuit answered yes; the Seventh Circuit answered no.  *Fisher*, 70 F. 4th at 1146-49; *Seafarers*, 23 F. 4th at 719-720.  Underlying both of those decisions is the Supreme Court's decision in *J.I. Case Co. v. Borak*, which, regarding Section 14(a) claims, stated plainly: "we believe that a right of action exists as to both derivative and direct causes."  377 U.S. 426, 431 (1964).  Whether or not that statement was dicta or otherwise abrogated by further decision of the Supreme Court undergirds much of the debate.  *Fisher*, 70 F. 4th at 1146.  The Third Circuit has not opined on the issue but has in the past considered Section 14(a) claims that were stylized as derivative.  *See, e.g., Cramer v. General Telephone & Electronics Corp.*, 582 F. 2d 259 (3d Cir. 1978) (res judicata on a derivative Section 14(a) claim); *General Elec. Co. by Levit v. Cathcart*, 980 F. 2d 927 (3d Cir. 1992) (addressing misstatement or omission materiality on appeal of a derivative Section 14(a) claim).  Although a question of import, the Court does not consider it, because another threshold issue bars Plaintiffs' claims: their failure to adequately plead demand futility.

5

As a matter of corporate law, the derivative action "permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). But the nature of the derivative suit impugns a corporate director's ability to control the corporation's litigation tool, so a plaintiff (or plaintiffs) seeking to file derivative suit must "either (1) make a demand on the company's board of directors to file the lawsuit itself, or (2) show that making such a demand would be 'futile.'" *In re Cognizant Tech. Sols. Corp. Derivative Litig.*, 101 F. 4th 250, 257 (3d Cir. 2024). Federal Rule of Civil Procedure 23.1 requires that derivative complaints allege "with particularity" whether that pre-suit demand was made and refused, or the reasons that such demand would be futile; the law of the state of incorporation governs the sufficiency of demand and demand futility. Fed. R. Civ. P. 23.1(b); *In re Cognizant*, 101 F. 4th at 257.

The parties agree Delaware law governs. (D.I. 83 at 8; 87 at 10-11 (citing *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A. 3d 1034 (Del. 2021))). Under Delaware law, courts look to three factors to decide whether demand is futile:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand; (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

*Zuckerberg*, 262 A. 3d at 1059.

If the answer to any of the *Zuckerberg* factors for a majority of the board's directors, as evaluated on a director-by-director basis, is "yes," then demand is futile; the allegations

establishing futility must be pled with particularity. *Id*. Here, Plaintiffs allege futility as to only four members of the Board: Defendants Buzby, Daley, Tammineedi, and Tyson ("the Director Defendants"). (D.I. 78 ¶¶ 400-415). Stem challenges the futility allegations against each of the Director Defendants but begins its challenge by arguing that each of the Director Defendants (and two non-party directors) face no potential liability under Section 14(a). (D.I. 83 at 9).

The Court begins and ends its analysis with that portion of Stem's challenge. As Stem correctly points out, with respect to Director Tyson, the Amended Complaint "makes *no* Section 14(a) allegations whatsoever against Dr. Tyson." (D.I. 83 at 10 (citing D.I. 78 ¶ 408)). Indeed, the Amended Complaint's section titled "Demand Futility Allegations" contains only one particularized allegation against Defendant Tyson; even then, doing little beyond the boilerplate accusations of dereliction of duty copy-pasted from other paragraphs alleging futility against the other directors. (D.I. 78 ¶ 408; D.I. 78 ¶¶ 405-407) (reciting, for each Director Defendant, the allegation: "As a trusted Company director, [they] conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements leading up to and after the Merger."). But an allegation of demand futility must be particularized, and for Section 14(a) claims, the requisite "substantial likelihood of liability on any of the claims that would be the subject of the litigation demand" would mean in part alleging that Defendant Tyson's role in "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Zuckerberg*, 262 A. 3d at 1059; *Tracinda Corp. v. DaimlerChrysler AG*, 502 F. 3d 212, 228 (3d Cir. 2007) (citation modified).

Plaintiffs get nowhere near that threshold. Indeed, the Amended Complaint states that Defendant Tyson only became a director *after* the Legacy Stem and STPK merger was consummated; so it would be difficult to see how Defendant Tyson would face liability for "the

7

proxy solicitation itself." (D.I. 78 ¶ 104); *Tracinda Corp.*, 502 F. 3d at 228. And even accepting as true Plaintiffs' contention in their Answering Brief to Stem that Defendant Tyson "still may be held liable for violating Section 14(a) of the Exchange Act as her name and reputation were used at length in the Merger Proxy as a means of soliciting shareholders to approve the proposals set forth," (D.I. 87 at 15), the Amended Complaint does not even suggest that was the case. At best, the Amended Complaint recounts Defendant Tyson's professional biography as it appeared in the Merger Proxy, and that her name was affixed to a 2022 10-K that contained a series of disclosures identifying potential business risks. (D.I. 78 ¶¶ 106, 357-361). But they do not allege that she played a role in the merger solicitation. As such, the allegations fail to reach the particularity threshold necessary to show that Defendant Tyson "would face a substantial likelihood of liability on [] the [Section 14(a)] claim[] that would be the subject of the litigation demand." *Zuckerberg*, 262 A. 3d at 1060.

Nor does the Amended Complaint make the effort to demonstrate either of the other *Zuckerberg* factors against Defendant Tyson. It makes no allegation against her "independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand," nor does it allege that she herself "received a material personal benefit." *Id*. at 1059. Again, even when read in Plaintiffs' favor, it alleges only that Defendant Tyson received substantial compensation from her directorship, generally stating a material personal benefit. (D.I. 78 ¶¶ 105, 408, 410). But, without further elaboration, that cannot suffice to state futility. *See Jacobs v. Yang*, Civ. No. 206 (SPL), 2004 WL 1728521, at *4 (Del. Ch. Aug. 2, 2004), *aff'd*, 867 A.2d 902 (Del. 2005) (citing *In re Ltd., Inc., S'holders Litig.*, Civ. No. 17148 (JWN), 2002 WL 537692, at *4 (Del. Ch. Mar. 27, 2002)); *see also SDF Funding v. Fry*, Civ. No. 2017-0732 (KSJM), 2022 WL 1511594, at *13 (Del. Ch. May 13, 2022) ("the materiality

8

inquiry must focus on the financial circumstances or personal affinities of the particular director in question") (citation modified).

In sum, Plaintiffs allege that demand would be futile against only four of Stem's directors, constituting a majority of the board. But they fail to adequately allege futility against one of those four, Defendant Tyson. As a result, Plaintiffs have failed to plead futility, the Amended Complaint fails to reach the pleading requirement for derivative actions, and the Section 14(a) claim must be dismissed. Fed. R. Civ. P. 23.1(b).

## B.    The State Law Claims

Plaintiffs again raise a host of state law claims that depend on the Court's exercise of federal jurisdiction. Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id*. § 1367(a).

A court may "decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction." *Kooker ex rel. Hecla Mining Co. v. Baker*, 497 F. Supp. 3d 1, 6 (D. Del. 2020); 28 U.S.C. § 1367(c)(3). Again, each of Plaintiffs' state law claims are "pendent claims arising under state law that would not independently qualify for federal-court adjudication." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Because the remaining federal claim fails the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

9

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Defendant Stem's motion to dismiss (D.I. 82) is GRANTED. Because the Court grants Stem's motion to dismiss, the Individual Defendants' motion to dismiss (D.I. 80) is DENIED AS MOOT.  An appropriate order will follow.